UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| **Robert Lettinga,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Hon. |
| v. | ) | |
| | ) | |
| **Regional Adjustment Bureau, Inc.,** | ) | |
| a Tennessee corporation, | ) | |
| | ) | 1:04CV0857 |
| Defendant. | ) | |
| | ) | |

Complaint

## I.  Introduction

1. This is an action for damages and declaratory relief, brought by a consumer against a debt collector in response to the debt collector's abusive, deceptive and/or unfair debt collection practices which violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Michigan Collection Practices Act ("MCPA"), M.C.L. § 339.901 *et seq.*

## II.  Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiffs' state law claims under 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. § 2201. Venue in this judicial district is proper because the pertinent events took place here.

## III.  Parties

3. Plaintiff Robert Lettinga is a natural person residing in Kent County, Michigan.

Mr. Lettinga is a "consumer" as the term is defined and used in the FDCPA. Mr. Lettinga is a "consumer" and a "debtor" as the terms are defined and used in the MCPA.

4. Defendant Regional Adjustment Bureau, Incorporated ("RAB") is a Tennessee corporation, doing business at 7000 Goodlett Farms Parkway, Memphis, Tennessee 38016-4916. RAB's registered agent is James S. Smith, Jr., 7000 Goodlett Farms Parkway, Memphis, Tennessee 38016-4916. RAB is a "debt collector" as the phrase is defined and used in the FDCPA. RAB is a "collection agency" and a "licensee" as these phrases and terms are defined and used in the MCPA.

**IV. Facts**

5. Mr. Lettinga is employed by Fifth Third Bank.

6. Mr. Lettinga opened a credit account with Fifth Third Bank, which he used to incur debt (the "debt") for personal, family and/or household purposes. The debt was a "debt" as the term is defined and used in the FDCPA and MCPA.

7. Mr. Lettinga later became unable to make monthly payments on the debt due to his unexpected divorce.

8. Fifth Third Bank hired RAB to collect the debt (Account No. 7350835) from Mr. Lettinga. Alternatively, Fifth Third Bank sold the debt to RAB or some other entity, on whose behalf RAB began efforts to collect the debt.

9. In or about early 2004, and pursuant to an agreement with RAB, Mr. Lettinga was paying the debt by making regular monthly payments to RAB in an amount that Mr. Lettinga could afford. Because of the divorce, Mr. Lettinga owed money to various creditors. Some of the creditors were being paid pursuant to the court order set forth in the judgment of divorce.

Mr. Lettinga's repayment plan was structured to repay the creditors named in the court order at faster rate than the other creditors. However, and each time that Mr. Lettinga paid off one of his creditors, he would increase the amount of the monthly payments being made to his remaining creditors. In that way, Mr. Lettinga intended to pay off all of his creditors and avoid having to file for bankruptcy.

10. In or about June of 2004, an employee of RAB telephoned Mr. Lettinga and stated that RAB no longer was willing to accept monthly payments from Mr. Lettinga and that the full balance was due and payable. Mr. Letting repeatedly stated to the employee that he did not have the funds to pay the debt in full at that time.

11. In late June and early July of 2004, RAB's employee made repeated telephone calls to Mr. Lettinga's residence, stating to Mr. Lettinga that if the debt was not paid immediately, then RAB would contact Mr. Lettinga's place of employment and have him fired. When Mr. Lettinga would hang up the phone on RAB's employee, the employee would again and immediately telephone Mr. Lettinga's residence.

12. In these telephone calls, RAB's employee repeatedly threatened that if Mr. Lettinga did not pay the debt, he would contact Mr. Lettinga's supervisor at his place of employment and arrange to have him fired. In order to give force to the threat, RAB's employee repeatedly referred to Mr. Lettinga's supervisor by her name.

13. On multiple occasions, RAB's employee telephoned Mr. Lettinga's residence and discussed Mr. Lettinga's debt with Mr. Lettinga's mother. Mr. Lettinga never gave RAB consent to discuss the debt with his mother.

14. Mr. Lettinga repeatedly stated to RAB's employee that Mr. Lettinga's employer

prohibited Mr. Lettinga from receiving telephone calls at work from debt collectors.

15.  On or about July 7, 2004, RAB's employee telephoned Mr. Lettinga's residence and spoke with Mr. Lettinga's mother. In the conversation, RAB's employee made the following statements:

a) When RAB's employee threatened to telephone Mr. Lettinga at work, Mr. Lettinga's mother stated, "It's not good to call him at work." RAB's employee sarcastically replied, "Well, he doesn't like to do anything when he's home either, so I can't help that, you know, he's not very responsible."

b) Mindful of the repeated threats by RAB's employee to contact Mr. Lettinga's supervisor and have him fired if the debt was not paid, Mr. Lettinga's mother asked, "You're still threatening to fire him?" RAB's employee replied, "That would be my recommendation."

c) Mr. Lettinga's mother stated that Mr. Lettinga could not afford to make larger monthly payments on the debt. RAB's employee replied, "Well then maybe he needs to learn how to spend his money and not run up credit cards to people he owes, people he works for."

16.  A few days later, Mr. Lettinga spoke by telephone with RAB's employee. In the conversation, RAB's employee made the following statements:

a) RAB's employee repeatedly stated that it was not good for Mr. Lettinga to owe money to his employer, implying that Mr. Lettinga would be fired from his job if the debt was not paid in full.

b) Mr. Lettinga repeatedly stated to RAB's employee that the employee was not to

4

discuss Mr. Lettinga's financial affairs with Mr. Lettinga's mother. RAB's employee refused to agree to cease communications with Mr. Lettinga's mother.

c) RAB's employee stated, "Maybe you should start taping these phone calls" and "I sure hope you're taping this phone call."

d) RAB's employee repeatedly insulted Mr. Lettinga, making statements such as "I'm not going to hold a conversation with someone who's not even intelligent enough to hire their own attorney for a divorce" and "Are you understanding anything that I am telling you?"

e) Mr. Lettinga repeatedly asked RAB's employee to provide his name. RAB's employee repeatedly refused to provide his name or otherwise give meaningful disclosure of his identity. Rather, RAB's employee told Mr. Lettinga, "If you would like my name, you will need to request that in writing."

17. The unlawful debt collection methods, acts and practices of RAB and its employee were willful. The violations of the FDCPA and MCPA by RAB and its employee were willful.

18. As an actual and proximate result of the acts and omissions of RAB and its employee, Mr. Lettinga has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, and suffering for which he should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1– Fair Debt Collection Practices Act

19. Plaintiff incorporates the foregoing paragraphs by reference.

20. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a) Defendant violated 15 U.S.C. § 1692c(a)(1) by communicating, or threatening to communicate with plaintiff, at time or place known or which should be known to be inconvenient to the consumer.

b) Defendant violated 15 U.S.C. § 1692c(a)(3) by communicating, or threatening to communicate with plaintiff, at his place of employment when defendant knew or had reason to know that plaintiff's employer prohibited plaintiff from receiving such communication.

c) Defendant violated 15 U.S.C. § 1692c(b) by communicating with plaintiff's mother in connection with the collection of a debt without first obtaining plaintiff's prior and direct consent.

d) Defendant violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which was to harass, oppress and abuse plaintiff in connection with the collection of a debt.

e) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; and

f) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

d) A declaration that defendant's practices violate the FDCPA; and

e) Such further relief as the court deems just and proper.

## Count 2– Michigan Collection Practices Act

21. Plaintiff incorporates the foregoing paragraphs by reference.

22. Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened and (ii) the legal rights of a creditor or debtor; and

c) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiffs seek judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

## Demand for Trial by Jury

Plaintiff hereby demands trial by jury.

Dated: December 21, 2004

_____
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503
(616) 776-1176